Laubie, J.
Jordan was indicted for unlawfully and maliciously shooting one Thomas Ferris, with intent to kill, and was convicted.
The evidence shows that Ferris, known as “Uncle Tom,” had been living in adulterous intercourse with Mrs. Ellen Logan; but he had quarreled with and left her some time before the shooting. After this separation Jordan became ac *472 quainted with the woman,and Ferris was jealous of him; and on the day of the shooting Ferris saw Jordan hunting for the woman, who was not just then at home, in order, as Jordan said, to get some clothes from her that she had washed for his brother. There was no direct evidence of any improper conduct between Jordan and Mrs. Logan. Ferris had been drinking quite heavily during the afternoon, and in the evening started to go to the woman’s house, ostensibly for a pair of shoes, when a friend advised him not to go, as Jordan might be there, “and get the drop on him,” but Ferris persisted in going. On going into the Logan house, he found Jordan, Mrs. Logan, Sam, her son, aged thirteen; Howard Hagan, aged thirteen; and still a younger boy, a son of Ferris and Mrs. Logan, in the sitting room, and he at once raised a disturbance. He accused Jordan of coming between him and the woman, and on Jordan denying it, he swore Jordan was a liar, and advanced toward him, at the same time putting his hand back into his hip pocket, as if to draw a weapon. At this the woman and children rushed from the room and heard Jordan exclaim, “Back! Back off me, Uncle Tom, back off me,” and immediately two shots were fired in quick succession, both by Jordan.
Ferris afterwards stated that when Jordan told him to back off, he, Ferris, had hold of a knife in his pocket, and was trying to open it, and that he struck Jordan after the first shot, with that hand. On the trial Ferris swore that he did not have a weapon on his person when Jordan shot him; that he had nothing but a small pen knife,and did not have that in his hand, and'was not trying to open it in’ his pocket, and had not said so afterwards.
Under this testimony the jury found Jordan guilty. The preponderance of the evidence was strongly in favor of Jordan on the question of self-defense, and we think the jury must have been misled by the instructions of the trial judge, and which "were excepted to by defendant’s counsel. *473 Upon that issue, a preponderance of the evidence was all that was necessary to clear the accused.
Under that issue the question was, whether the defendant was justified in shooting Ferris — whether there had been such a demonstration on the part of Ferris that justified the defendant in believing, and inducing him honestly to believe, that Ferris intended to kill him, or do him some great bodily harm.
There was no evidence of any actual conflict or combat, or of any blow struck by either party, until after the first pistol shot; and the blow and the second shot were, simultaneous.
The court instructed the jury:
“If you find from the evidence, beyond a reasonable doubt, that the defendant did shoot Thomas Ferris, then you will next inquire, was It done in self-defense; also, was there a conflict between the defendant and Thomas Ferris; and if so, who was the aggressor,or the first to make a malicious assault in the conflict, and did the defendant only use such force, while engaged in the conflict, as was reasonably necessary to save his life, or his person, from great bodily harm. If you are satisfie.d, from a preponderance of the evidence that Thomas Ferris first made a malicious assault upon the defendant,and that the defendant did the shooting while endeavoring to defend himself against that malicious assault, on the honest belief that his life was in danger, or his person in danger of great bodily harm from said Thomas Ferris, and that the defendant used no more force than was necessary to repel the assailant,then upon such finding your verdict should be for-the defendant. ”
The word “assault” has two distinct meanings in reference to private quarrels, one technical, the other common or ordinary. To assault another, in common acceptation, means to, strike or beat another. In law, according to its. technical meaning, it signifies, - not a blow, but a mere attempt to strike — a threatening motion indicating an intent to strike or shoot another; as in this case, on the part of *474 Ferris, when he thrust his hand behind him into his hip pocket, and made a threatening movement towards, and an advancement upon, Jordan, with angry and abusive language. In law a blow is not an assault; it is a battery.
Ferris made but a technical assault on Jordan, before the first shot — no blows had been struck. The trial judge repeatedly used the words “malicious assault” in his instructions, and told the jury he wished to emphasize the fact that the assault must have been a malicious assault upon the part of Ferris, and yet these words were not explained to the jury at all. Having two meanings, one of which applied to the action of Ferris, while the other did not, it was important that the sense in which they were used should have been made known to the jury, in justice to the defendant. As it was, in the light of the evidence, it must be assumed that the jury understood and regarded the phrase in its common and ordinary meaning, more especially because of the connection in which it was used: “Who was the aggressor,or the first to make a malicious assault in the conflict.” A conflict is a fight, a battle; and this would seem to imply, in view of such ordinary meaning, that such assault must have been a part of an actual fight — a striking of Jordan; and the jury could acquit the defendant, therefore, on the ground of self-defense only by finding that Ferris had opened the conflict and began an actual fight before Jordan shot; that the shooting was done during such conflict; and they must have so understood it, judging from their finding.
The jury were also instructed to determine whether defendant did “only use such force, while engaged in the conflict, as was reasonably necessary to save his life, or his person from great bodily harm;” and that they must be satisfied, from a preponderance of the evidence, “that the defendant used no more force than was necessary to repel the assailant.5 ’
In determining questions upon a preponderance of evidence, the jury are not required to be satisfied, i. e., *475 convinced of their truth or falsity. A preponderance of the evidence must determine such questions with the jury whether they are convinced, or not. But, passing this, there is another serious objection to this part of the charge in this, that the jury could not Ejcquit the defendant on the ground of self-defense, unless they found that he had used no more force than was necessary to repel his assailant.
■ That proposition is well enough in a proper case, and is an important question in fisticuffs, or in a conflict where the aggressor desiring to withdraw from the conflict, flees, and his opponent pursues and injures him, or where one continues to beat, or wounds the other, after he knows the other is disabled, and no longer able to continue the combat. But it was not applicable to the case at bar, at least without proper qualification, and would, and we think did, mislead the jury, to the prejudice of the accused.
There was no evidence that Ferris had a deadly weapon at the time, unless the small penknife, which he described, could be called such; and there was no evidence that Jordan was actually in danger of life or limb from the attack, as even the small knife was not used, and hence the jury would at once say that the defendant had used more force than was actually necessary, as they were required to determine it as a matter of fact,and not as matter of appearance. It was not a matter to be determined upon the real facts, as after-wards established; Jordan might justifiably have killed Ferris, although in no actual danger himself of being killed or grievously hurt by the assault made upon him, if it was of such a character as would justify a reasonable man in the belief that Ferris had a deadly weapon,and was about to draw it and use it.
We'must look at such matters in the light of current events. It is a common course of procedure, now, for men to carry a revolver in the „hip, or, so-called, pistol-pocket, and, especially by those of bad habits, or who are of, or are *476 allied to, the criminal classes, to draw and u se it on slight provocation; and when such a person seeks a quarrel with another, and in hot blood, with abusive words, makes a sudden advance on such other, at the same time thrusting his hand into his pistol-pocket, with threatening look and jesture, any reasonable man, in the careful use of his faculties, would expect to see such assailant immediately draw and use a revolver. And if one such undertakes to threaten, bully and scare another in that way, and induce him to believe he is about to draw and use such a weapon when he has none, the consequences should rest.on his own head, aúd not on that of him he assaults.
In all such cases the question before the jury is one of apparent and not of real facts. How did it appear to the defendant ? Looked at from this stand point, how would it appear to reasonable men? Was the conduct of the assailant,under all the circumstances, sufficient to induce a reasonable man to honestly believe that such assailant intended to draw a weapon and kill or grievously injure him? If yes, and the defendant did honestly so believe, he would be justified in acting on that belief, and in shooting to kill. He would not be bound to run the risk of waiting to see if his assailant would in fact draw a weapon — -that might be too late for safety; nor can we, in such case, limit the amount of force to be used, and say the defendant should have used no more force than was necessary — he should only have knocked his assailant ’ down, or shot him in the arm instead of in the neck.
The learned trial judge might have properly submitted to the jury the question whether the defendant unnecessarily used a deadly weapon; or, if he preferred so to put it, used more force than was necessary in consideration of all the apparent circumstances, and in view of the action and conduct of Ferris, and their probable effect upon the mind of ^ reasonable man. But it was a mistake to instruct the jury, in substance, that the defendant had no right to use more *477 force than was necessary to - repel the assault actually, instead of appafeutly made by. Ferris.
In Darling v. Williams, 35 Ohio St., 62, Judge Boynton, for the court, laid down the principle that is to govern in such cases, in quite forcible language, to-wit:
“One person can justify the taking of the life of another in self-defense only where,, in the proper exercise of his faculties he believes, in good faith, that hé is in imminent ■danger of death, or grievous bodily harm. * * * It is not, however, necessary that the danger should prove xeal, or in fact exist, for, whether, real or apparent, if the ■circumstances are such as to induce a belief, reasonable and well grounded, that life is in peril, or that grievous bodily harm is impending, the party threatened with the danger may act upon appearances and slay his assailant.”
And this necessarily excludes the idea that he must have, in fact, -used no more force than was necessary to repel the assailant; otherwise, the plea of self-defense would be of no avail unless the danger was real. The able trial judge, as we have seen, recognized the right of the defendant to act upon his honest belief of the danger, but unfortunately he limited that right to the use of no more force than was actually necessary to repel the assailant.
At the request of counsel for the defendant, the court gave the following instruction to the jury:
“That if the accused was in the lawful pursuit of his business, and without blame was violently assaulted by one who manifestly and maliciously endeavored and intended to kill him, the person so assaulted, without retreating, although in his power to do so without increasing the danger, may ■kill his assailant if necessary to save his own life, or prevent enormous harm.”
To which the court added:
“I give you this last instruction, gentlemen, and wish to ■emphasize the fact that the assault must have been a malicious assault; that is, 'the person making the^ assault name at the other maliciously, and with every manifestation *478 of endeavoring to bill the person assaulted, and that he was prepared, and manifested the fact that he was able to carry out this malicious assault. It is only under such circumstances that the person assaulted may use the force necessary without retreating, as given in this proposition.”
The request given was an abstract proposition of law, and Jordan did not bill Ferris; yet as he was charged with, and perhaps had, an intent to bill him, it may have been proper to give it. But whether it was so or not, as the court did give it, it was bound to give the law correctly in any qualification or explanation of the request given to the jury.
The qualification of the request as given by the court, mabes the right of self-defense, in cases libe this, impracticable and impossible of proof. It leaves the assaulted at the mercy of the assailant. It requires the assaulted to mabe an accurate summary of the situation. He must see to it, and establish, that his assailant exhibited every manifestation of endeavoring to bill him (whatever that may mean), and that he was prepared, and manifested the fact that he was able to carry out his malicious assault; i. e., to bill the assaulted, before the right of slaying his assailant would accrue.
It is clear that it is not under these circumstances only that the assaulted may slay his assailantwithout retreating,nor is it necessary to prove these matters as facts in order to establish a justifiable billing in self-defense; and the manner in which the court qualified the request, would compel the jury to convict the defendant under the evidence in the case.
It is not the imminence of the danger that is the test, but the appearance of it. The assailant may not have, in fact, endeavored or intended to bill — he may not have a weapon about him that would bill, if used; yet if he mabes an advance upon, and a movement toward the accused, that would indicate such intent to a reasonable man, in such careful use of his faculties as the situation would permit, and the *479 accused honestly believed that his assailant intended to|kill or grievously wound him, he would, as we have seen, be justified in slaying his assailant.
W. E. Meclill & Sweeny, for Plaintiff in Error.
E. E. Erslcine, for Defendant in Error,
In short, without further repetition, we think there was error in the instructions prejudicial to the accused, and that by reason thereof the jury were misled in rendering the verdict against him.
Judgment reversed and cause remanded.